# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Assurance Co. of America, et al.,

    Plaintiffs

v.

Ironshore Specialty Ins. Co.,

    Defendant

No.: 2:15-cv-00460-JAD-PAL

Order on motions for summary judgment

[ECF Nos. 39, 40]

    The plaintiff insurance companies footed the bill for 15 construction-defect lawsuits brought against various construction companies. These insurers bring this action because they believe that the defendant Ironshore Specialty Insurance Company also owed a duty to defend in the underlying cases, so it should help pay the defense costs. The twist is that the plaintiffs do not dispute that Ironshore's policies provide no coverage for the underlying judgments against the insureds. Instead, they argue that the complaints in the underlying lawsuits were so vague that there was, at one point, a potential for coverage—and this potentially triggered Ironshore's duty to defend and its obligation to pay defense costs.

    Ironshore's duty to defend was triggered only if the construction companies were sued for "sudden and accidental" damages. The thrust of the complaints in the underlying actions is that the insureds made mistakes when they built homes, like using the wrong materials. But nowhere do the complaints seek relief for damages caused by a sudden accident. The plaintiffs suggest that because it was theoretically possible that an accident was caused by an alleged defect, Ironshore should have defended the insureds until it was clearer that there was no coverage.

    Although the duty to defend is broad, it is not limitless. A possibility that there could *later* be a potential for coverage is not the same as an *existing* potential for coverage—and the latter is needed to trigger the duty to defend. I thus grant summary judgment in favor of Ironshore and against the plaintiffs.

**Background**

The construction company insureds were sued in 15 separate lawsuits.[1] The complaints in these suits all allege that the insureds caused property damage by failing to use reasonable care when building residential homes.[2] The complaints vaguely allege that the defects in the buildings caused damage. They also attach a list of alleged defects, including problems like "defective lights," "inconsistent water temperature at showers," "excessive drywall cracking," and "defectively applied drywall patches."[3] The insureds demanded that Ironshore provide a defense to these suits, but Ironshore refused because it concluded that the lawsuits fell under an exclusion in Ironshore's policy.

Ironshore's policies generally cover property damage caused by its insureds.[4] But each policy excludes coverage for "continuous or progressive injury."[5] This exclusion says that Ironshore's policy does not cover any damages that existed "prior to the inception of this policy."[6] And it also deems any damages caused by an insured's work to be "prior to the inception of this policy" if the insured's work was performed before the policy-start date.[7] In short: the exclusion bars coverage if the insured worked on a home before the policy-start date, even if the damage from that work actually occurred after the policy went into effect.

So there is no coverage for damages caused by things that the insured construction companies did prior to the policy-start dates. That is a problem for the plaintiffs, because there is no dispute that all of the construction work was done prior to Ironshore's policies going into effect.

---

[1] ECF No. 25. The insureds include: Cedco, Inc.; Debard Plumbing, Inc.; Laird Whipple Concrete Construction; Nevada Concrete Services, Inc.; JP Construction; Universal Framing, Inc.; Lukestar Corporation; PR Construction Corporation; and, R.A.M.M. Corporation.

[2] *See, e.g.,* ECF No. 39-64 (complaint for construction defects against one of the insureds).

[3] *Id.* at 17–19.

[4] ECF No. 39-3 at 5–6.

[5] *Id.* at 31.

[6] *Id.*

[7] *Id.*

The plaintiffs rely on an exception to this exclusion, which states that the coverage bar does not apply to "sudden and accidental" damage.[8] In other words: even if the insured's work was completed prior to the policy date, there is still coverage for sudden accidents that occur after the policy-start date.

**Discussion**

**A.     The underlying complaints did not trigger Ironshore's duty to defend.**

"The duty to defend is broader than the duty to indemnify."[9] An insurer has a duty to defend unless "there is no potential for coverage."[10] The duty to defend arises whenever the insurer "ascertains facts [that] give rise to the potential of liability under the policy"[11] and "continues throughout the course of the litigation."[12] To prevent an insurer from evading its defense obligations "without at least investigating the facts behind a complaint," any doubts about the insurer's duty to defend must be resolved in the insured's favor.[13] The duty to defend may be triggered by facts known to the insurer through extrinsic sources or by the factual allegations in the complaint.[14] The insured has the duty to point to allegations or evidence giving rise to a potential for coverage.[15]

---

[8] *Id.*

[9] *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (en banc).

[10] *Id.* (quotation omitted) (emphasis in original).

[11] *Id.* (quotation omitted).

[12] *Id.* (quotation omitted).

[13] *Id.*

[14] *Andrew v. Century Surety Co.*, 2014 WL 1764740, at *4 (D. Nev. April 29, 2014) (Gordon, A.) (predicting that the Nevada Supreme Court would apply the four-corners rule only when the complaint raises the possibility of coverage but the insurer's own investigation suggests there is no possibility of coverage).

[15] *Arrowood Indem. Co. v. Bel Air Mart*, 2014 WL 841314, at *5 (E.D. Cal. Mar. 4, 2014) (holding that the insured bears the burden of establishing that there is a potential for coverage, including that an exception to an exclusion applies); *Wynn's Int'l, Inc. v. Cont'l Ins. Co.*, 1995 WL 498846, at *3 (N.D. Cal. Aug. 14, 1995) (holding that plaintiffs have the burden to prove an exception to an exclusion applies, but only to the extent that there is a potential for coverage). . The parties disagree

Although broad, the duty to defend is not limitless. "An insured may not trigger the duty to defend by speculating about extraneous facts regarding potential liability."[16] The allegations in a complaint must create a *current* potential of coverage, not merely raise a theoretical possibility that a potential for coverage could exist in the future. For example, a district court held in another case that Ironshore had no duty to defend construction-defect cases brought against its insureds because the complaints in the underlying actions did not actually allege that any covered accidents occurred.[17] The court rejected the argument that there was an existing potential for coverage because the complaint could later be amended to allege an accident that that would give rise to coverage.[18]

I similarly held in a recent case that just because an insured was sued for intentional interference with a business relationship did not mean that a defamation-claim insurance policy was triggered.[19] This was so even though it was possible that the intentional-interference claims could later encompass an underlying defamation claim.[20] I explained that, until there is some existing allegation or evidence suggesting that the insured is actually being sued for defamation, the duty to

---

about who bears the burden of proof to show the duty to defend was triggered here. Ironshore suggests that the plaintiffs must affirmatively prove that the sudden and accidental exception applies. The plaintiffs argue that it is Ironeshore that must disprove coverage. Neither are precisely correct. Plaintiffs have the burden to prove the duty to defend was triggered, which, in turn, requires it to demonstrate that the sudden and accidental exception was triggered. But the standard for showing the duty to defend applies remains low: the plaintiffs merely need to show that there was a potential for coverage. *Id.*

[16] *Beazley Ins. Co. v. Am. Econ. Ins. Co.*, 2013 WL 2245901, at *7 (D. Nev. May 21, 2013).

[17] *Am. Zurich Ins. Co. v. Ironshore Specialty Ins. Co.*, 2014 WL 3687727, at *1 (E.D. Cal. July 23, 2014) (addressing nearly-identical arguments about similar Ironshore policies); *see also Am. Zurich Ins. Co. v. Ironshore Specialty Ins. Co.*, 2016 WL 6441610, at *8 (E.D. Cal. Oct. 31, 2016) ("[T]here are no allegations or information that would lead to the conclusion that sudden or accidental damage occurred and caused the water damage to the homes. As such, the Court concludes that Defendant reasonably compared the allegations of the complaint with the terms of the policy and determined that it did not owe a duty to defend as is required under the law.").

[18] *Am. Zurich Ins. Co.*, 2014 WL 3687727, at *1

[19] *Nautilus Ins. Co. v. Access Med., LLC*, 2016 WL 5429650, at *4 (D. Nev. Sept. 27, 2016).

[20] *Id.*

defend is not triggered.[21]

The plaintiffs maintain that the allegations against the insureds in the underlying actions create a potential for coverage triggering Ironshore's duty to defend under its policy. They reason that although the complaints did not allege that any sudden accidents happened, they also did not expressly state there were no such accidents. In short: because the insureds were sued for causing property damage, and because causing property damage could, in theory, include an accident—there is a potential for coverage triggering the duty to defend.

The plaintiffs' argument would expand the duty to defend to the breaking point. Before the duty is triggered, there must be some allegation or evidence to create a current potential for coverage. And an allegation that is so vague that it could possibly encompass covered allegations in the future is not enough. Not only are there no actual allegations here that a sudden accident occurred, there is not even the suggestion of an accident in any of the complaints. The thrust of the complaints is that the insureds defectively built homes before Ironshore's policies started. And that claim is precisely what Ironshore's policies exclude: claims related to an insured's work performed prior to the policy-start date. The parties' policies are explicit about this exclusion.

Without any existing evidence or allegations giving rise to a potential for covered liability, there is no present duty to defend. Taking all of the allegations in the underlying complaints and the extrinsic evidence offered here, there is no indication that the insureds were being sued for an act covered by Ironshore's policy. There was thus no duty to defend.

**B. The plaintiffs' other arguments for why Ironshore should have to pay are unavailing.**

The plaintiffs alternatively argue that Ironshore should be barred from asserting its exclusion here. They first contend that Ironshore's policies are ambiguous because they are unclear about whether the date of damage matters, or instead, the date the underlying work is done. They point to the general provisions that provide coverage for damage occurring during the policy period, which, they say, conflicts with the exclusion for damage caused by the insured's own work.

---

[21] *Id.*

This argument is unavailing. "An insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties."[22] "An insurer has a right to limit the policy coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume."[23] Ironshore's policies have broad coverage provisions for damage occurring during the policy period and then exclusions that carve out certain types of damages that are not covered. That is entirely proper. This is why courts have rejected the plaintiffs' same argument before.[24]

And none of the authority cited by the plaintiffs helps them. For example, plaintiffs cite *Pennsylvania Gen. Ins. Co. v. Am. Safety Indem. Co.*, but there the court found that terms in the policy were ambiguous about whether the trigger of coverage referred to the time when damage was inflicted or when the causal acts were committed.[25] The policy here could not be more clear: it specifically states that property damage caused by work that was completed prior to the policy's inception is not covered.

The plaintiffs finally argue that the exclusion is unenforceable because it is not sufficiently obvious in the policy. Exclusions in insurance policies must be stated clearly and unambiguously.[26] The exclusion is identified on page 2 of the list of endorsements at the front of each policy. It is in the same type as the surrounding text, not buried or inconspicuous. So I cannot say that it is insufficiently obvious.

## Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the **defendant's motion for summary judgment [ECF No. 40] is GRANTED.**

---

[22] *Farmers Ins. Grp. v. Stonik By & Through Stonik*, 867 P.2d 389, 391 (Nev. 1994).

[23] *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 430 (9th Cir. 2011).

[24] *Am. Zurich Ins. Co.*, 2014 WL 3687727, at *5.

[25] 185 Cal. App. 4th 1515, 111 Cal. Rptr. 3d 403 (2010); *Crawford v. Ranger Ins. Co.*, 653 F.2d 1248, 1251 (9th Cir. 1981).

[26] *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).

IT IS FURTHER ORDERED that **plaintiffs' motion for partial summary judgment [ECF No. 39] is DENIED.**

The Clerk of Court is directed to enter judgment in favor of the defendant and against the plaintiffs and CLOSE THIS CASE.

Dated this 24th day of August, 2017

_____
Jennifer A. Dorsey
United States District Judge